No. 24-2081

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

_____

GUISTINA APRILEO,

*Plaintiff–Appellee,*

v.

CHERYL CLAPPROOD, individually and as Police Commissioner, City of Springfield; CITY OF SPRINGFIELD; OFFICER RICHARD T. WARD, individually and as Police Officer, Springfield Police Department; OFFICER THALIA CASTRO, individually and as Police Officer, Springfield Police Department; OFFICER JASON BACIS, individually and as Police Officer, Springfield Police Department,

*Defendants–Appellants.*

_____

On Appeal from the United States District Court
for the District of Massachusetts
No. 3:21-cv-30114-MGM
Hon. Mark G. Mastroianni

_____

AMICUS BRIEF OF INSTITUTE FOR JUSTICE
SUPPORTING APPELLEE AND AFFIRMANCE

_____

Marie Miller
INSTITUTE FOR JUSTICE
3200 N. Central Ave., Ste. 2160
Phoenix, AZ 85012
mmiller@ij.org

Jaba Tsitsuashvili
INSTITUTE FOR JUSTICE
901 N. Glebe Rd., Ste. 900
Arlington, VA 22203
jtsitsuashvili@ij.org

## CORPORATE DISCLOSURE STATEMENT

*Amicus Curiae* the Institute for Justice is not a publicly held corpo-
ration and has no parent corporation, and no publicly held corporation
owns any portion of its stock. *See* Fed. R. App. P. 26.1(a); L.R. 29(a)(4)(A).

Dated: June 26, 2025                    /s/ Marie Miller
                                        Marie Miller

                                        *Counsel for Amicus Curiae*
                                        *Institute for Justice*

# TABLE OF CONTENTS

Corporate Disclosure Statement...................................................ii

Table of Authorities.................................................................iv

Identity and Interest of Amicus Curiae....................................1

Argument..............................................................................2

I. *Heck* does not bar Aprileo's claims because she was not convicted. ..........................................................................4

    A. *Heck* does not apply without a conviction. ...................4

    B. Aprileo's probation agreement was not a conviction.....................6

II. Appellants and their amicus argue to extend *Heck*, with negative policy consequences. ...........................................11

    A. Reversing the district court requires extending *Heck*. ..............11

    B. Extending *Heck* would have negative policy consequences. .......13

        i. Appellants' position—if adopted—would contravene the text and purpose of § 1983 and create anomalous results...14

        ii. Appellants' position—if adopted—would undermine the criminal-justice system's integrity.......................................16

        iii. Appellants' amicus offers unpersuasive policy arguments for reversal. .........................................................17

Conclusion ..........................................................................20

Certificate of Compliance.....................................................22

# TABLE OF AUTHORITIES

**Cases:**                                                    **Page(s)**

*Brownback v. King,*
　592 U.S. 209 (2021)................................................................1

*Cohen v. Longshore,*
　621 F.3d 1311 (CA10 2010).....................................................5

*Duarte v. City of Stockton,*
　60 F.4th 566 (CA9 2023)......................................................1, 9

*Figueroa v. Rivera,*
　147 F.3d 77 (CA1 1998). ........................................................5

*Gilles v. Davis,*
　427 F.3d 197 (CA3 2005). ...................................................5, 10

*Gonzalez v. Trevino,*
　602 U.S. 653 (2024)................................................................1

*Harden v. Pataki,*
　320 F.3d 1289 (CA11 2003)....................................................5

*Heck v. Humphrey,*
　512 U.S. 477 (1994)........................................................ *passim*

*Huang v. Johnson,*
　251 F.3d 65 (CA2 2001). ........................................................5

*Lackey v. Stinnie,*
　145 S. Ct. 659 (2025)............................................................17

*Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency,*
　440 U.S. 391 (1979)..............................................................15

*Lyall v. City of Los Angeles*,
807 F.3d 1178 (CA9 2015). ....................................................................5

*Martin v. United States*,
No. 24-362, 2025 WL 1657418 (U.S. June 12, 2025)............................1

*McClish v. Nugent*,
483 F.3d 1231 (CA11 2007)....................................................................9

*McDonough v. Smith*,
588 U.S. 109 (2019)........................................................................10, 12

*Mitchell v. Kirchmeier*,
28 F.4th 888 (CA8 2022)...........................................................1, 9, 10

*Mitchum v. Foster*,
407 U.S. 225 (1972)...............................................................................14

*Monell v. Dep't of Soc. Servs.*,
436 U.S. 658 (1978)...............................................................................16

*Monroe v. Pape*,
365 U.S. 167 (1961)...............................................................................16

*Muhammad v. Close*,
540 U.S. 749 (2004)...............................................................................10

*Murphy v. Schmitt*,
145 S. Ct. 122 (2024)..............................................................................1

*Newmy v. Johnson*,
758 F.3d 1008 (CA8 2014). ....................................................................5

*Patel v. Garland*,
596 U.S. 328 (2022)...............................................................................17

*Patsy v. Bd. of Regents*,
457 U.S. 496 (1982)................................................................................5

*Powers v. Hamilton Cnty. Pub. Def. Comm'n,*
 501 F.3d 592 (CA6 2007). ....................................................................5

*Savory v. Cannon,*
 947 F.3d 409 (CA7 2020). ...................................................................5

*S.E. v. Grant Cnty. Bd. of Educ.,*
 544 F.3d 633 (CA6 2008). ...................................................................9

*Singleton v. City of New York,*
 632 F.2d 185 (CA2 1980). .................................................................13

*Small v. Collins,*
 10 F.4th 117 (CA2 2021). ..................................................................13

*Taylor v. Gregg,*
 36 F.3d 453 (CA5 1994). ...................................................................13

*Thompson v. Clark,*
 596 U.S. 36 (2022)..............................................................1, 12, 15

*Vasquez Arroyo v. Starks,*
 589 F.3d 1091 (CA10 2009)..............................................................9

*Wallace v. Kato,*
 549 U.S. 384 (2007)..............................................................7, 8, 10

*Wilson v. Johnson,*
 535 F.3d 262 (CA4 2008). ...................................................................5

*Wilson v. Midland County,*
 116 F.4th 384 (CA5 2024)....................................................................5

*Wyatt v. Cole,*
 504 U.S. 158 (1992)..........................................................................14

*Ziglar v. Abbasi,*
 582 U.S. 120 (2017)..........................................................................18

**Statutes & Rules:**

28 U.S.C. § 2254. ................................................................. 4, 5

42 U.S.C. § 1983. ................................................................. 2, 15

Fed. R. App. P. 28(a)(4)(E). ..................................................... 1

Fed. R. App. P. 29(a)(2). .......................................................... 1

L.R. 29(a)(2). ........................................................................ 1

L.R. 29(a)(4)(D). .................................................................... 1

L.R. 29(a)(4)(E). .................................................................... 1

Fed. R. Civ. P. 11. ................................................................. 19

Fed. R. Civ. P. 12. ................................................................. 20

Fed. R. Civ. P. 16(c)(2)(A). ..................................................... 20

**Other:**

Black's Law Dictionary (11th ed. 2019). ................................... 8

Br. for the District Attorneys Ass'n of the State of New York, *Thompson v. Clark*, No. 20-659 (Aug. 23, 2021). ...................................... 18

Ed Cohen, *Judges overwhelmingly approve of plea bargaining, largely for practical reasons*, Nat'l Jud. Coll. (June 14, 2021) ........... 19

John Gramlich, *Only 2% of federal criminal defendants went to trial in 2018, and most who did were found guilty*, Pew Rsch. Ctr. (June 11, 2019) ........................................................................... 19

Petition for Certiorari, *Wilson v. Midland County*, No. 24-672 (U.S. Dec. 12, 2024) ...................................................................... 5

## IDENTITY AND INTEREST OF AMICUS CURIAE[1]

The Institute for Justice (IJ) is a nonprofit, public-interest law firm dedicated to defending the foundations of a free society. One of those foundational principles is the American people's ability to hold the government and its officials accountable for violating individuals' constitutional rights. Part of IJ's mission is to remove procedural barriers to the enforcement of constitutional rights. IJ represents clients in cases (like this one) concerning the scope of government accountability,[2] and it regularly files amicus briefs on the topic, including in three cases the district court cited.[3]

Reversing the district court to apply the procedural bar of *Heck v. Humphrey*, 512 U.S. 477 (1994), to Guistina Aprileo's claims would create a new barrier to enforcing constitutional rights. IJ thus has an interest

---

[1] No party's counsel authored any part of this brief, and no one other than Amicus Institute for Justice contributed money for this brief's preparation or submission. *See* Fed. R. App. P. 28(a)(4)(E); L.R. 29(a)(4)(E). The parties consented to the filing of this brief. *See* Fed. R. App. P. 29(a)(2); L.R. 29(a)(2), 29(a)(4)(D).

[2] *See, e.g.*, *Martin v. United States*, No. 24-362, 2025 WL 1657418 (U.S. June 12, 2025); *Murphy v. Schmitt*, 145 S. Ct. 122 (2024); *Gonzalez v. Trevino*, 602 U.S. 653 (2024); *Brownback v. King*, 592 U.S. 209 (2021).

[3] *See Thompson v. Clark*, 596 U.S. 36 (2022); *Duarte v. City of Stockton*, 60 F.4th 566 (CA9 2023); *Mitchell v. Kirchmeier*, 28 F.4th 888 (CA8 2022).

in this Court's review and affirmance of the district court's decision, which aligns with the text and purpose of 42 U.S.C. § 1983, Supreme Court precedent, and a growing majority of circuit courts that have addressed the issue.

## Argument

This appeal concerns Guistina Aprileo's ability to bring claims under 42 U.S.C. § 1983 for excessive force against one law-enforcement officer who fractured her elbow while arresting her and another officer who failed to intervene. (The incident happened after officers de-escalated a domestic dispute among Aprileo's adult children.) After the incident, Aprileo was charged with resisting arrest, disorderly conduct, and assault and battery on a police officer. Those charges were dismissed, though, after Aprileo completed an agreed-upon three-month term of probation. As a result, her criminal case never reached a judgment. Aprileo then brought her § 1983 claims against the officers.[4]

The district court held that Aprileo's claims are not barred under the Supreme Court's ruling in *Heck v. Humphrey*, 512 U.S. 477 (1994). In

---

[4] She brought other claims, too. All but one of those claims are not at issue in this appeal. The one that is need not be addressed because any arguments to revive it were forfeited.

doing so, the district court joined the Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits, reasoning that *Heck* comes into play only when a civil claim undermines a conviction or sentence, and pretrial diversion is neither. *See infra* Part I.B.

The district court was correct. *Heck* prevents a plaintiff from bringing a § 1983 claim that, if successful, would necessarily imply the invalidity of a conviction or sentence. *See Heck*, 512 U.S. at 486–87. For most § 1983 claims—including Aprileo's excessive-force claims—*Heck* does no more than that. *See infra* Part II.A. Because Aprileo's claims do not necessarily impugn a conviction or sentence (given that the criminal case against her was dismissed), *Heck* is no bar.

Appellants and their amici urge this Court to expand *Heck*, adding a judicially crafted shield against liability under § 1983 that would apply even when defendant officers offended the Constitution. That new shield has no backing in Supreme Court precedent, much less the text and purpose of § 1983. Indeed, the clear statutory text of § 1983 provides a remedy for constitutional violations. Appellants' position, if accepted, would prevent vindication of constitutional rights for a large group of people:

those who faced criminal charges that were dismissed through an agreement. Neither § 1983 nor *Heck* were fashioned to produce that result.

## I.  *Heck* does not bar Aprileo's claims because she was not convicted.

### A.  Heck *does not apply without a conviction.*

*Heck* established a bar limited to § 1983 claims that, if successful, "would render a conviction or sentence invalid." 512 U.S. at 486. A plaintiff who has been convicted of a crime may not proceed with any § 1983 claims that would necessarily undermine his conviction or sentence unless the conviction or sentence has already been invalidated another way. *Id.* at 486–87.

This rule reflects its purpose. The Supreme Court crafted the rule for two reasons: First, to prevent convicted litigants from using § 1983 to skirt around the more onerous requirements of the federal habeas corpus statute, 28 U.S.C. § 2254; *Heck*, 512 U.S. at 480–83; and second, to prevent collateral attacks on "the validity of outstanding criminal judgments," *Heck*, 512 U.S. at 486.

As to the first reason, when individuals in custody seek to challenge their conviction or sentence, the habeas statute requires them to exhaust available state remedies. 28 U.S.C. § 2254(b); *Heck*, 512 U.S. at 480–81.

By contrast, § 1983 has no exhaustion requirement. *See Patsy v. Bd. of Regents*, 457 U.S. 496, 501 (1982). To close that gap, the *Heck* bar screens out "§ 1983 damages claims that do call into question the lawfulness of conviction or confinement." *Heck*, 512 U.S. at 482; *see id.* at 480; *id.* at 491 (Souter, J., concurring). Custodial claimants attacking their convictions or sentences must abide by the habeas statute's more onerous demands.[5]

As to the second reason (avoiding conflicting judgments), a successful § 1983 claim conflicts with a state criminal judgment only when there

---

[5] The circuits are split over whether *Heck* applies, even in the presence of a conviction, when the plaintiff cannot (or could not) avail herself of the federal habeas statute, 28 U.S.C. § 2254—because in that situation, there is no conflict between the habeas statute and § 1983. *Compare Figueroa v. Rivera*, 147 F.3d 77, 81 (CA1 1998); *Gilles v. Davis*, 427 F.3d 197, 210 (CA3 2005); *Wilson v. Midland County*, 116 F.4th 384, 388 (CA5 2024) (en banc); *Savory v. Cannon*, 947 F.3d 409, 421 (CA7 2020) (en banc); *Newmy v. Johnson*, 758 F.3d 1008, 1010–11 (CA8 2014), *with Huang v. Johnson*, 251 F.3d 65, 75 (CA2 2001); *Wilson v. Johnson*, 535 F.3d 262, 267–68 (CA4 2008); *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 601, 603 (CA6 2007); *Lyall v. City of Los Angeles*, 807 F.3d 1178, 1191–92 (CA9 2015); *Cohen v. Longshore*, 621 F.3d 1311, 1316–17 (CA10 2010); *Harden v. Pataki*, 320 F.3d 1289, 1299 (CA11 2003). We do not address that split here because the facts do not raise the issue (because Aprileo was not convicted in the first place) and this Court has already taken a position on the split. Elsewhere, though, we have argued that *Heck* does not apply to non-custodial plaintiffs. *See* Petition for Certiorari, *Wilson v. Midland County*, No. 24-672 (U.S. Dec. 12, 2024).

exists a still-valid judgment of conviction. *Heck* addressed the question "whether a state prisoner may challenge the constitutionality of his *conviction* in a suit for damages under 42 U.S.C. § 1983." 512 U.S. at 478 (emphasis added); *see also id.* at 480 n.2 (stating the question as "whether money damages premised on an *unlawful conviction* could be pursued under § 1983" (emphasis added)). The Court answered: No, unless the conviction has already been invalidated. *See id.* at 486–87.

Holding—as Appellants urge—that *Heck* bars claims in the absence of a conviction would extend *Heck* for no good reason. After all, § 1983 provides damages liability for the violation of constitutional rights, and extending *Heck* to bar even meritorious claims of constitutional violations conflicts with this statutory demand. *See infra*, Part II.B.i.

Because the *Heck* bar applies only when there exists an outstanding conviction, the appropriate question here is whether Aprileo's probation agreement is a "conviction" that triggers the *Heck* bar. It is not.

### B.   *Aprileo's probation agreement was not a conviction.*

The Supreme Court has given clear instructions for determining whether the *Heck* bar applies: "[C]onsider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his *conviction or*

*sentence*." 512 U.S. at 487 (emphasis added). If the plaintiff's (successful) action will not "demonstrate the invalidity of any *outstanding criminal judgment* against the plaintiff, the action should be allowed to proceed." *Id.* (emphasis added).

As the Supreme Court clarified in *Wallace v. Kato*, a conviction for purposes of the *Heck* bar is an "outstanding criminal judgment." 549 U.S. 384, 393 (2007); *see also Heck*, 512 U.S. at 487 (referring to a conviction as an "outstanding criminal judgment"). That is why the *Heck* bar is lifted only by invalidation of the conviction in one of four ways: (1) reversal on appeal, (2) expungement, (3) a writ of habeas corpus, or (4) state post-conviction relief. *See Heck*, 512 U.S. at 487. The Court in *Heck* did not address any concerns with § 1983 claims that undermine other aspects of pending criminal proceedings—only the final result of a conviction.

Nobody disputes that, here, the state criminal court never entered a judgment of conviction. That should have ended the *Heck* inquiry. Without an outstanding conviction that could be invalidated in one of the four ways specified in *Heck*, the *Heck* bar was never triggered.[6]

---

[6] Aprileo's claims likewise cannot impugn the validity of a "sentence," because she was never given one. A "sentence" for *Heck* purposes is the "confinement" imposed as punishment on a person who has been

As a result, we never reach the second question whether there was a "favorable termination" of the prosecution by reversal on appeal, expungement, a writ of habeas corpus, or state post-conviction relief. *See Heck*, 512 U.S. at 487.

The Supreme Court's ruling in *Wallace* drives home the point. In *Wallace*, the Court explained that a plaintiff may bring a § 1983 claim for wrongful arrest any time before a conviction is entered, even if the plaintiff is in custody. 549 U.S. at 388, 393. More specifically, the Court observed that the *Heck* bar would not prevent the plaintiff from bringing his § 1983 claim any time between the claim's accrual (when the allegedly wrongful arrest occurred) and the entry of a criminal conviction. *See id.* at 392–95. This included the time when the plaintiff was "held pursuant to legal process"—that is, after a probable-cause finding. *Id.* at 393. Even then, the *Heck* bar did not apply because "there was in existence no criminal conviction that the cause of action would impugn." *Id.*

*Wallace* is instructive here because Aprileo, like the *Wallace* plaintiff, brought § 1983 claims that accrued before a conviction was entered.

convicted. 512 U.S. at 483; *see also Sentence*, Black's Law Dictionary (11th ed. 2019) (defining "sentence" with reference to a "judgment of conviction").

8

She also entered an agreement whereby (upon successfully completing probation) her case was dismissed before reaching a judgment. As *Wallace* confirmed, *Heck* does not prevent her from bringing § 1983 claims before a conviction is entered, regardless of whether the agreement was carried out. And if *Heck* does not bar claims while the prosecution is ongoing, then it also does not bar claims after the criminal case is dismissed.

Notably, other circuits have adhered to *Heck*'s limits, declining to extend the *Heck* bar in the absence of a conviction. *See Duarte v. City of Stockton*, 60 F.4th 566, 570–73 (CA9 2023); *Mitchell v. Kirchmeier*, 28 F.4th 888, 895–96 (CA8 2022); *Vasquez Arroyo v. Starks*, 589 F.3d 1091, 1095 (CA10 2009); *S.E. v. Grant Cnty. Bd. of Educ.*, 544 F.3d 633, 637–39 (CA6 2008); *McClish v. Nugent*, 483 F.3d 1231, 1250–52 (CA11 2007). The courts in these cases, which post-date *Wallace*, have reasoned that agreements resulting in dismissal of charges do not create a conflict between a § 1983 judgment and a state criminal judgment, so the *Heck* bar simply does not apply.[7] The agreements in those cases—like the one

---

[7] *See Mitchell*, 28 F.4th at 895–96; *Vasquez*, 589 F.3d at 1095; *McClish*, 483 F.3d at 1251; *see also Grant Cnty. Bd. of Educ.*, 544 F.3d at 639.

here—involved the accused avoiding a conviction by agreeing to conditions.

The Eighth Circuit in *Mitchell* also succinctly explained why the Third Circuit's contrary decision in *Gilles v. Davis*, 427 F.3d 197 (CA3 2005), is unpersuasive: applying the *Heck* bar when the prosecution ended in dismissal of the charges—even if the dismissal was based on an agreement—conflicts with both "what the Court said in *Heck*" and "what the Court has consistently held since." *Mitchell*, 28 F.4th at 896 (citing *Wallace,* 549 U.S. at 393). Indeed, *Gilles* predated *Wallace*. And in the years since the Third Circuit decided *Gilles*, the Supreme Court has clarified that the *Heck* bar applies only when there exists an "outstanding criminal judgment" that could be invalidated by reversal on direct appeal, expungement, habeas relief, or state post-conviction relief. *Wallace*, 549 U.S. at 393; *see McDonough v. Smith*, 588 U.S. 109, 114–15 (2019).[8]

---

[8] *See also Muhammad v. Close*, 540 U.S. 749, 751 (2004) (per curiam) ("In *Heck* … , we held that where success in a prisoner's § 1983 damages action would implicitly question the validity of *conviction or duration of sentence*, the litigant must first achieve favorable termination of his available state, or federal habeas, opportunities to challenge the underlying *conviction or sentence*." (emphases added)).

II.  **Appellants and their amicus argue to extend *Heck*, with negative policy consequences.**

    A.  *Reversing the district court requires extending* Heck.

Appellants and their amicus, the Chiefs of Police Association, urge the Court to treat Aprileo's probation agreement as a "conviction" for purposes of the *Heck* bar. Building on that premise, the Association argues that Aprileo must, and cannot, demonstrate "judicial exoneration" or "an adjudication of innocence," which—in the Association's view—should be required to proceed with her claims. Br. of Amicus Curiae the Massachusetts Chiefs of Police Association, Inc. ("Police Ass'n Br."), at 5–6. Only then, the Association reasons, can Aprileo show that her criminal case "was resolved in [her] favor." *Id.* at 6. This argument has two major flaws.

First, again, *Heck*'s favorable-termination requirement is triggered by a conviction. Had Aprileo been convicted, she would need to show favorable termination through reversal on appeal, expungement, a writ of habeas corpus, or state post-conviction relief. *See Heck*, 512 U.S. at 487. But because she was not convicted in the first place, *Heck* does not come into play at all and Aprileo does not face a favorable-termination requirement.

It is true that plaintiffs asserting malicious-prosecution claims under § 1983 must show that the prosecution ended in the accused's favor no matter how far the prosecution progressed. *Heck*, 512 U.S. at 484; *McDonough*, 588 U.S. at 119–21; *Thompson v. Clark*, 596 U.S. 36, 39 (2022). That is because an element of common-law malicious prosecution is favorable termination of the prosecution. *McDonough*, 588 U.S. at 116–17. But Aprileo's claims are not that type; they "fall outside *Heck*'s ambit" entirely. *Id.* at 119. And, regardless, *Thompson v. Clark* clarified that favorable termination of a prosecution means that the "prosecution ended without a conviction," 596 U.S. at 39—which is the second major flaw with the Association's argument.

Indeed, the Supreme Court in *Thompson* rejected the argument that plaintiffs must demonstrate that "the prosecution ended with some affirmative indication of [the claimant's] innocence." *Id.* at 39. And yet, the Association here reasons that Aprileo's claim should not proceed because her probation agreement "did not involve a finding of innocence,

nor did it reject the legitimacy of the initial charges." Police Ass'n Br. at 9. The Association's reasoning runs headlong into *Thompson*.[9]

### B. Extending Heck *would have negative policy consequences.*

Accepting Appellants' invitation to extend *Heck* would impose a new penalty on certain individuals—those whose rights were violated outside the legal process (that is, in ways other than malicious prosecution), who were later charged with a crime, and who agreed to conditions in exchange for the charge's dismissal. These individuals would be stripped of the opportunity to hold government officials accountable in a § 1983 action for violating their constitutional rights. This is troubling for two main reasons: first, it would conflict with the statutory text and purpose and create nonsensical results; and second, it would create incentives that undermine the criminal-justice system's integrity.

---

[9] Two cases the Association cites, *Singleton v. City of New York*, 632 F.2d 185 (CA2 1980), and *Taylor v. Gregg*, 36 F.3d 453 (CA5 1994), involved malicious-prosecution claims. As already explained, *Thompson* abrogated both by rejecting a requirement that plaintiffs show innocence to establish favorable termination. *See also Small v. Collins*, 10 F.4th 117, 142 (CA2 2021) (retreating from *Singleton*).

### i. Appellants' position—if adopted—would contravene the text and purpose of § 1983 and create anomalous results.

Congress passed § 1983 as part of the "new structure of law that emerged in the post-Civil War era." *Mitchum v. Foster*, 407 U.S. 225, 238–39 (1972). That new structure's centerpiece was the Fourteenth Amendment and "the Federal Government as a guarantor of basic federal rights against state power." *Id.* At the time, state courts were notorious as either "powerless to stop deprivations" or "in league with those who were bent upon abrogation of federally protected rights." *Id.* at 240.

Congress responded with legislation that is now § 1983, which "opened the federal courts to private citizens, offering a uniquely federal remedy against incursions under the claimed authority of state law upon rights secured by the Constitution." *Mitchum*, 407 U.S. at 239. Without doubt, § 1983 exists "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). The text reflects this purpose:

> Every person who, under color of any statute … of any State … subjects … any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by

the Constitution and laws, shall be liable to the party injured
in an action at law … .

42 U.S.C. § 1983. What's more, as a remedial statute, it is "well settled

that § 1983 must be given a liberal construction." *Lake Country Estates,*

*Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 399–400 (1979).

Appellants' position would contravene § 1983's text and purpose by

establishing the following: the remedy that § 1983 provides for violations

of constitutional rights is unavailable to all those who agreed to condi-

tions in exchange for the dismissal of criminal charges arising from the

same underlying events. That rule dampens the deterrent effect of § 1983

and denies victims of rights violations the judicial vindication that § 1983

prescribes.

Appellants' position would also create a strange disparity in *Heck*'s

application. The *Heck* bar would *not* apply to those whose convictions

have been invalidated, but it *would* apply to those who were never con-

victed in the first place. "That would make little sense." *Thompson*, 596

U.S. at 48; *see id.* ("[R]equiring the plaintiff to show that his prosecution

ended with an affirmative indication of innocence would paradoxically

foreclose a § 1983 claim when the government's case was weaker and

15

dismissed without explanation before trial, but allow a claim when the government's evidence was substantial enough to proceed to trial.").

### ii. Appellants' position—if adopted—would undermine the criminal-justice system's integrity.

Another troubling result is decreased government accountability that threatens the criminal-justice system's integrity. If Appellants' position is adopted, officers may violate a person's constitutional rights with impunity so long as that person enters a pre-judgment agreement to dismiss charges against them. As a result, prosecutors would have immense power to shield law enforcement officers from civil litigation by bringing charges and entering such an agreement.

This interplay between criminal process and shielding officers from civil liability for unconstitutional acts undermines the criminal-justice system's integrity. As explained above, it also subverts the purpose of § 1983, which is to provide a federal forum to remedy constitutional violations. *See Monroe v. Pape*, 365 U.S. 167, 171 (1961) ("Its purpose is plain from the title of the legislation, 'An Act to enforce the Provisions of the Fourteenth Amendment to the Constitution of the United States, and for other Purposes.'"), *overruled in part by Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

16

### iii.  Appellants' amicus offers unpersuasive policy arguments for reversal.

The Association makes three policy arguments for extending *Heck*. None is compelling.

As an overarching matter, again, Appellants' and the Association's position would contravene the text and purpose of § 1983 by disallowing meritorious § 1983 claims alleging violations of federal rights. This Court is not at liberty to contravene the statutory text based on policy judgments. *See, e.g.*, *Lackey v. Stinnie*, 145 S. Ct. 659, 669 (2025) ("It is Congress's job to craft policy and ours to interpret the words that codify it."); *Patel v. Garland*, 596 U.S. 328, 346 (2022) ("[P]olicy concerns cannot trump the best interpretation of the statutory text."). But even if the court were to consider that policy-making course, the Association's policy arguments are unpersuasive.

**First**, the Association says affirming the district court here "will create a chilling effect on law enforcement" because officers will fear liability. Police Ass'n Br. at 11. But, for better or worse, police officers already have robust shields against liability. Most notorious is qualified immunity, which the Supreme Court fashioned specifically to give officers breathing room to make split-second judgments without fear of

litigation and liability. *Ziglar v. Abbasi*, 582 U.S. 120, 150–51 (2017). Another is the Fourth Amendment's reasonableness standard, which protects officers' reasonable actions from triggering liability. Affirming the district court here would not disturb these shields against litigation and liability.

**Second**, the Association predicts that affirmance will undermine and discourage pretrial diversion agreements and will "undermine the finality of criminal dispositions." Police Ass'n Br. at 12–13.

As to the discouragement of pretrial diversion agreements, the Supreme Court in *Thompson* rejected the argument that a showing of innocence should be required to avoid that result. *See Thompson*, 596 U.S. at 49; Br. for the District Attorneys Ass'n of the State of New York, *Thompson v. Clark*, No. 20-659, at 24–26 (Aug. 23, 2021) (urging the Court to require plaintiffs to show affirmative indications of innocence because an opposite ruling would incentivize prosecution).

Even if *Heck*'s current scope encourages prosecution, accepting Appellants' position would, too. That's because Appellants' position gives officers a free pass for violating individuals' rights so long as (1) the victim is charged with a crime based on the same underlying events; and (2) the

victim agrees to conditions in exchange for the dismissal of the criminal charge. That state of affairs encourages the filing of criminal charges that prosecutors would not otherwise bring. After all, nearly all criminal cases end with some kind of agreement resulting in the dismissal of at least some charges. *See* Ed Cohen, *Judges overwhelmingly approve of plea bargaining, largely for practical reasons*, Nat'l Jud. Coll. (June 14, 2021), https://perma.cc/EL93-FBKF ("More than 95 percent of criminal cases today end in plea agreements."); John Gramlich, *Only 2% of federal criminal defendants went to trial in 2018, and most who did were found guilty*, Pew Rsch. Ctr. (June 11, 2019), https://perma.cc/EQ2H-LUFJ.

As to finality, allowing claims like Aprileo's to proceed does nothing to undo the disposition of the criminal case, which remains closed.

**Third**, the Association predicts "a wave of baseless lawsuits against cities, towns, and police departments" and "chaos in the legal system" if this Court affirms the district court. Police Ass'n Br. at 14–15. But five circuits operate under *Heck* as the district court interpreted it, with no ensuing "chaos" in sight. And affirming the district court does not give plaintiffs permission to file baseless lawsuits. Federal Rule of Civil Procedure 11 prohibits frivolous claims and carries with it the threat of

sanctions; and courts can swiftly eliminate baseless claims also by grant-ing motions to dismiss or to strike under Rule 12, or other ways, *see, e.g.*, Fed. R. Civ. P. 16(c)(2)(A). So the district court's ruling does not invite "an avalanche of lawsuits." Police Ass'n Br. at 16.

Ultimately, good policy favors adherence to the statutory text and purpose of § 1983. Without the federal remedy of § 1983, officers may vi-olate federal rights carte blanche, knowing that so long as the victim is charged with a crime and enters some kind of agreement—which hap-pens in nearly every case—they are shielded from civil lawsuits and lia-bility.

## CONCLUSION

The district court correctly ruled that *Heck* is no bar to Aprileo's claims because her probation agreement was not a conviction. Appellants and their amicus urge this Court to extend *Heck* on policy grounds, but doing so is inconsistent with the text and purpose of Section 1983, and the relevant policy considerations militate against extending *Heck*. This Court should affirm.

Dated: June 26, 2025   /s/ Marie Miller

Marie Miller
INSTITUTE FOR JUSTICE
3200 N. Central Ave., Ste. 2160
Phoenix, AZ 85012
mmiller@ij.org

Jaba Tsitsuashvili
INSTITUTE FOR JUSTICE
901 N. Glebe Rd., Ste. 900
Arlington, VA 22203
jtsitsuashvili@ij.org

*Counsel for Amicus Curiae*
*Institute for Justice*

### CERTIFICATE OF COMPLIANCE

This document complies with the word limits of Fed. R. App. P. 29(a)(5) and 32(a)(7) because it contains 4,182 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word Version 2505 in Century Schoolbook 14-pt font.

June 26, 2025                                     /s/ Marie Miller

                                                 Marie Miller
                                                 INSTITUTE FOR JUSTICE
                                                 3200 N. Central Ave., Ste. 2160
                                                 Phoenix, AZ 85012
                                                 mmiller@ij.org

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this document was filed electronically on June 26, 2025, and thus, will be served electronically upon all counsel.

June 26, 2025                                      /s/ Marie Miller

                                                  Marie Miller
                                                  INSTITUTE FOR JUSTICE
                                                  3200 N. Central Ave., Ste. 2160
                                                  Phoenix, AZ 85012
                                                  mmiller@ij.org

23